

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 10 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHARLES WILLIAM PERDUE | Case No. 7:16-mj-35 |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A SEARCH WARRANT

I, Ryan A Sloan, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of certain electronic devices, more fully described below, which are currently in law enforcement possession, and the extraction from these devices of electronically stored information described in Attachment B.

2. I am a Task Force Officer with the Drug Enforcement Administration, and have been since September 2015. I have been employed by the Roanoke Police Department since October 2008. Prior to this DEA assignment, I spent 2 years assigned to the Patrol Bureau, 2 years assigned to the Street Investigations Unit and 2 1/2 years assigned to the Narcotics and Organized Crime Unit. During these assignments I have made narcotics arrests that have led to convictions at both the State and Federal levels. I am familiar with the methods and patterns of illegal drug trafficking at both the street and wholesale level. I know from my training and

experience how cellular devices are used to facilitate drug trafficking. I am further aware that the memory contents of these cellular devices often contain information of significant evidentiary value.

3. This affidavit is intended only to establish sufficient probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is as follows:

   a. A Black Apple iPhone, Model number A1387 found in a book bag belonging to Charles William PERDUE, JR. This device is currently located at the United States Post Office, 419 Rutherford Ave, Roanoke, VA.

   b. A Black AT&T cellular phone, Model number Z431, serial number 322322221407, found in a book bag belonging to Charles William PERDUE, JR. This device is currently located at the United States Post Office, 419 Rutherford Ave, Roanoke, VA.

   c. A Black Alcatel One Touch cellular phone, Model number 5017B, serial number NAC65SKE06IOY, found in the front jean pocket of Charles William PERDUE, JR. at the time of his arrest. This device is currently located at the United States Post Office, 419 Rutherford Ave, Roanoke, VA.

   d. A Black LG cellular phone, Model number LGL34C, serial number 140CQXM1264634, found in a book bag belonging to Charles William PERDUE,

2

JR. This device is currently located at the United States Post Office, 419 Rutherford Ave, Roanoke, VA.

5.  The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment A.

## STATEMENT OF PROBABLE CAUSE

6.  On two different occasions in December, 2015, DEA TFO Ryan Sloan, Virginia State Police Special Agent Joseph Crowder and Postal Inspector Sean McCafferty located and seized pound-level amounts of methamphetamine that had been mailed from California via the United States Postal Service to Roanoke, VA. From cooperating defendant testimony and video surveillance, agents were able to determine that Charles William PERDUE, JR. was the person responsible for mailing this methamphetamine. Cooperating defendants described a long-running relationship with PERDUE during which he distributed these pound-level amounts of methamphetamine to them, and handled the affairs of this conspiracy, including matters of delivery and payment, via telephone.

7.  Throughout this investigation Charles William PERDUE, JR. made phone calls from two different phone numbers, specifically from 310-614-9949 and 951-221-2256 to effectuate the business of methamphetamine distribution. These numbers were identified by cooperating sources known to law enforcement as being numbers that PERDUE used to arrange methamphetamine distribution.

8.  Your affiant has a recorded conversation between a cooperating defendant and Charles William PERDUE, JR. that took place on January 7th, 2016. Perdue called the

3

cooperating defendant from 310-614-9949. During the conversation, the distribution of methamphetamine was discussed.

9.  On February 2nd, 2016, Charles William PERDUE, JR. was arrested in Bellflower, CA for Possession with Intent to Distribute Methamphetamine. At the time of his arrest, PERDUE was found to be in possession of pound-level amounts of methamphetamine packaged in a manner substantially identical to the methamphetamine described above that had been seized from the mail. PERDUE was also found to be in possession of the four cell phones described above. One was on his person, and the other three were found in a book bag discovered during the further investigation of PERDUE. These phones were secured and shipped back to Roanoke, VA in the custody and control of the USPIS.

10. Given that PERDUE had no other telephones in his possession at the time of his arrest, your affiant reasonably believes that one or more of these seized devices were used to manage the business of the conspiracy, as well as to make the call that resulted in the recorded conversation.

11. The Devices are currently stored in a secured vault at The United States Post Office located at 419 Rutherford Ave Roanoke, VA. In my training and experience, I know that the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the USPIS.

12. Your affiant knows from training and experience that cellular telephones are a tool of drug distribution. Drug dealers often use text messaging to arrange drug deals. An

4

analysis of call patterns can identify other drug dealers. Photographs or videos found on cellular telephones often show contraband, or locations where contraband may be found. Contact numbers stored in a cellular telephone may identify other drug dealers or associates. Your affiant also knows from training and experience that persons who distribute illegal narcotics use multiple phones to hide evidence of their crimes from law enforcement. All told, significant evidence of criminal activity can be found within cellular telephones found in the possession of a drug dealer.

## TECHNICAL TERMS

13.  Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing

5

and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

14. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, phone book, digital camera, digital recorder, GPS Navigation, portable media player, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

15. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.

16. *Forensic evidence.* As further described in Attachment A, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

6

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

17. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but

7

not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it contains evidence described by the warrant.

18. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

19. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in paragraph 4, above, in order to seek the items described in Attachment A.

Respectfully submitted,

_____
Ryan A. Sloan
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me
on March 10, 2016:

_____
UNITED STATES MAGISTRATE JUDGE

8